# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MARNEY K. B.,**[1] | )    **NO. CV 18-7934-KS** |
|          **Plaintiff,** | ) |
| | ) |
|      **v.** | )    **MEMORANDUM OPINION AND ORDER** |
| | ) |
| **ANDREW M. SAUL,**[2] **Commissioner** | ) |
| **of Social Security,** | ) |
|          **Defendant.** | ) |
| ———————————————— | ) |

## INTRODUCTION

Marney K. B. ("Plaintiff") filed a Complaint on September 12, 2018, seeking review of the denial of her application for Supplemental Security Income ("SSI"). (Dkt. No. 1.) The parties have consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 10, 13.) On July 8, 2019, the parties filed a Joint Stipulation. (Dkt. No. 23 ("Joint Stip.").) Plaintiff seeks an order reversing the ALJ's decision

---

[1]     Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.
[2]     The Court notes that Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court orders that the caption be amended to substitute Andrew M. Saul for Nancy A. Berryhill as the defendant in this action.

with an award of disability benefits.  (Joint Stip. at 33-34.)  The Commissioner requests that the ALJ's decision be affirmed or, in the alternative, that the matter be remanded for further administrative proceedings.  (*Id.* at 34-35.)  The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On January 31, 2013, Plaintiff filed an application for SSI.  (Administrative Record ("AR") 33, 80, 94.)  Plaintiff alleged disability beginning on March 28, 2007 because of foot problems, back problems, and dyslexia.  (AR 68, 81.)   Later, Plaintiff amended her alleged disability onset date to January 1, 2015.  (AR 56.)[3]  After the Commissioner denied Plaintiff's application initially (AR 68-79) and on reconsideration (AR 81-93), Plaintiff requested a hearing (AR 113-15).  At a hearing held on July 21, 2016, at which Plaintiff appeared with counsel, an Administrative Law Judge ("ALJ") heard testimony from Plaintiff and a vocational expert ("VE").  (AR 52-67.)  On August 23, 2016, the ALJ issued an unfavorable decision denying Plaintiff's application for SSI.  (AR 33-46.)  On October 4, 2017, the Appeals Council denied Plaintiff's request for review.  (AR 9-14.)  The Appeals Council also granted Plaintiff two extensions of time, the latest on August 8, 2018, to file this civil action.  (AR 1.)

## SUMMARY OF ADMINISTRATIVE DECISION

Applying the five-step sequential evaluation process, the ALJ made the following findings.  The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her amended alleged disability onset date of January 1, 2015.  (AR 35.)  At step two, the ALJ found that Plaintiff had the following severe impairments: "lumbar spine sprain/strain with right-sided radiculopathy, status post left ankle surgery, and moderate major

---

[3]     Plaintiff was 46 years old on her amended alleged disability onset date (AR 45) and thus met the agency's definition of a younger person.  *See* 20 C.F.R. § 416.963(c).

depressive disorder." (*Id*.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). (AR 36.) The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform "light work" as follows:

> [She] can stand or walk for four hours out of an eight-hour workday with an assistive device; sit for six hours out of an eight-hour workday; and occasionally climb, balance, stoop, kneel, crouch, and crawl. She should alternate sitting and standing every hour. She can understand and remember tasks, can sustain concentration and persistence, can socially interact with the general public, coworkers, and supervisors, and can adapt to workplace changes frequently enough to perform unskilled low stress jobs that would require simple instructions.

(AR 38.) At step four, the ALJ found that Plaintiff could not perform her past relevant work as a house cleaner. (AR 44-45.) At step five, the ALJ relied on the VE's testimony to find that Plaintiff could perform other work in the national economy, in the light occupations of basket filler, merchandise marker, and information clerk. (AR 46.) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id*.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740

F.3d 519, 522-23 (9th Cir. 2014) (citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citation omitted). The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citations omitted).

## DISCUSSION

The parties raise three issues: (1) whether the ALJ properly evaluated whether Plaintiff met or equaled a Listed Impairment; (2) whether the ALJ properly evaluated Plaintiff's subjective complaints of pain; and (3) whether the ALJ properly determined Plaintiff's residual functional capacity and ability to perform other work. (Joint Stip. at 3.)

//

//

4

# I.     The ALJ Did Not Err In Assessing The Listed Impairments (Issue One).

In Issue One, Plaintiff argues that the ALJ erred in failing to consider whether Plaintiff's condition met or equaled the requirements of Listing 12.05(C) (Intellectual disability).  (Joint Stip. at 3-6. 8-10.)

## A.     Legal Standard.

At step three of the Commissioner's five-step analysis, an ALJ must determine whether a claimant's impairment or combination of impairments meets or equals a listed impairment set out in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).  To "meet" a listed impairment, the claimant must establish that her impairment meets each element of the listed impairment in question.  *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Tackett*, 180 F.3d at 1099.  If a claimant's conditions do not meet the requirements of a listed impairment, the claimant can show "equivalence" if his impairment or combination of impairments "is at least equal in severity and duration to the criteria of any listed impairment."  *See Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013).  "The mere diagnosis of an impairment listed in Appendix I is not sufficient to sustain a finding of disability."  *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).  Rather, a claimant must produce evidence of findings that satisfy each of the requirements of a listed impairment.  *See id*. at 1550.

"An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment.  A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so."  *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (citing *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) (holding that an ALJ erred by failing to consider evidence of equivalence)).  On the other hand, "[i]t is unnecessary to require the [ALJ], as a matter of law, to state why a claimant failed to satisfy

every different section of the listing of impairments." *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990). All that is required is "an adequate statement of the foundations on which the ultimate factual conclusions are based," which can be satisfied by specific findings that are essential to an ALJ's conclusions at step three. *See id.* (citation and internal quotation marks omitted).

## B. Analysis.

The ALJ did not discuss Listing 12.05 in his decision. At the time of his decision in August 2016, Listing 12.05 referred "to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05 (2016). In particular, Listing 12.05(C) required "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function." *Id.* at § 12.05 (C). Thus, Listing 12.05(C) had three main components: (1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) an IQ score of 60 to 70; and (3) a physical or other mental impairment causing an additional and significant work-related limitation. *See Kennedy*, 738 F.3d at 1176 (analyzing an earlier but substantively identical version of Listing 12.05(C)).

Plaintiff contends that she met the requirements of Listing 12.05(C) because she had (1) a full scale IQ score of 60 or 61; and (2) another mental impairment, a learning disability due to dyslexia, imposing additional and significant work-related limitation of function. (Joint Stip. at 4-5.) This showing is insufficient to demonstrate reversible error.

As an initial matter, Plaintiff has not shown that she satisfies the threshold requirement of Listing 12.05(C), which is subaverage intellectual functioning with deficits in adaptive

6

functioning initially manifested before age 22.  *See Kennedy*, 738 F.3d at 1176; *McLemore v. Berryhill*, 727 F. App'x 435, 437 (9th Cir. 2018) (finding no reversible error in an ALJ's failure to discuss Listing 12.05(C) where "the record does not indicate that [the claimant] exhibited intellectual disability with an onset date before age 22.").  Although Plaintiff points to evidence that she dropped out of high school in the twelfth grade (Joint Stip. at 4 (citing AR 389, 603)), it would be entirely speculative to attribute this to an intellectual disability before age 22, especially in light of evidence that Plaintiff did not receive special education (AR 603) and went on to attend community college (AR 389).

Although this deficiency is sufficient to reject Plaintiff's listing argument, it is meritless in another respect.  As to the second requirement of Listing 12.05(C), the full scale IQ scores of 60 and 61, as cited by Plaintiff, were not considered valid.  Specifically, the examining psychiatrist who administered the IQ tests stated that "[t]he results obtained do not appear valid" (AR 392) and that "the results obtained do not appear valid and may underestimate her true abilities" (AR 606).  *See McLemore*, 727 F. App'x at 437 (finding no reversible error in an ALJ's failure to discuss Listing 12.05(C) because "[a]lthough Dr. Dean assessed a full-scale IQ of 63, Dr. Dean's own report cast doubt on the validity of the IQ score."); *Oviatt v. Comm'r of Soc. Sec. Admin.*, 303 F. App'x 519, 523 (9th Cir. 2008) (finding that requirements of Listing 12.05(C) were not met because "the IQ results [the claimant] provided were questionable"); *Pearsall v. Astrue*, 243 F. App'x 296, 298 (9th Cir. 2007) (same because "the testing physician questioned the validity of the score and none of the medical opinions diagnosed mental retardation").  While Plaintiff contends that the ALJ should have asked the examining psychiatrist to explain why the scores were invalid (Joint Stip. at 5), such an action would have been unnecessary because Plaintiff's argument already fails on the independent ground that she has not offered any evidence of an onset date before age 22.  As discussed above, Plaintiff has not offered any evidence suggesting an intellectual disability before the age of 22.  Given that Plaintiff was at least 44 years old when she took the IQ tests, her scores, even assuming they were valid, would have been insufficient to meet the requirements of the

7

listing. *See Oviatt*, 303 F. App'x at 523 (rejecting argument under Listing 12.05(C) where "the IQ tests were administered twelve to fourteen years after the relevant time period under the statute").

Finally, although Plaintiff also appears to contend that she "equaled" the requirements of Listing 12.05(C), she has not explained how she has done so. (Joint Stip. at 4.) Thus, reversal is not warranted for this contention. *See Burch*, 400 F.3d at 683 (holding that an ALJ's failure to consider equivalence is not reversible error where the claimant "did not offer any theory, plausible or otherwise, as to how his impairments combined to equal a listing impairment") (citing *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001)).

## II.    The ALJ Did Not Reversibly Err In Assessing Plaintiff's Subjective Complaints Of Pain (Issue Two).

In Issue Two, Plaintiff contends that the ALJ did not properly assess her subjective complaints of pain. (Joint Stip. at 10-13, 17-19.)

### A.    Legal Standard.

An ALJ must make two findings in assessing a claimant's subjective pain or symptom allegations. Social Security Ruling ("SSR") 16-3P, 2017 WL 5180304, at *3 (Oct. 25, 2017); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Treichler*, 775 F.3d at 1102 (citation omitted). "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms" and those reasons must be

supported by substantial evidence in the record. *Id.*; *see also Marsh v. Colvin*, 792 F.3d 1170, 1174 n.2 (9th Cir. 2015). "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*)).

Beginning on March 28, 2016, SSR 16-3P rescinded and superseded the Commissioner's prior rulings as to how the Commissioner will evaluate a claimant's statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims. *See* SSR 16-3P, 2017 WL 5180304, at *1. Because the ALJ's decision in this case was issued on August 23, 2016, it is governed by SSR 16-3P. *See id.* at *13 & n.27. In pertinent part, SSR 16-3P eliminated the use of the term "credibility" and clarified that the Commissioner's subjective symptom evaluation "is not an examination of an individual's character." SSR 16-3P, 2017 WL 5180304, at *2; *see also Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017). These changes are largely stylistic and are consistent in substance with Ninth Circuit precedent that existed before the effective date of SSR 16-3P. *See Trevizo*, 871 F.3d at 678 n.5.

## B.    Background.

At the hearing, Plaintiff testified as follows about her impairments and symptoms:

She last worked in 2014, when she cleaned houses with the help of her children. (AR 55.) She has pain in her neck and back, as well as tendonitis in her hands. (AR 57.) These symptoms prevent her from sitting or standing, and the pain lasts for the whole day. (*Id.*) She can perform some household chores with the help of her children and with rest. (AR 57, 62.) She can wash dishes and shop at the grocery store. (AR 62.) She can stand for 30 minutes at

a time, sit for 25 to 30 minutes at a time, and walk for 50 minutes at a time. (AR 57.) She cannot lift a gallon of milk. (AR 62.) Her feet swell every day because of a pinched nerve. (AR 58.) She needs to sit down with her feet elevated for at least one hour per day. (*Id*.) Her pain improves with ibuprofen, prescription medications, and baths. (*Id*.) When she wakes up in the morning, she feels like she is going to fall of the bed. (AR 59.) Using a cane helps. (*Id*.) She spends the day at home watching television or reading. (AR 63.) She has bipolar disorder. (AR 59.) She feels fine around other people but not her children. (*Id*.) She also has depression. (AR 60.) She does not like to take orders from others and cannot concentrate. (*Id*.)

In addition to testifying at the hearing, Plaintiff completed a written Function Report, describing her abilities and activities as follows. (AR 238-46.) She takes her children to two different schools, tries to clean the house, cooks sometimes, and washes clothing. (AR 239.) Her children take care of their dog. (*Id*.) She bathes and cares for herself, with some difficulty, and her children sometimes help her put on socks. (*Id*.) She prepares meals with the help of her daughter. (AR 240.) She can drive and go out alone. (AR 241.) She shops for groceries and second-hand clothing. (*Id*.) She is able to handle money. (*Id*.)

**C.    Analysis.**

The ALJ initially found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (AR 40.) The ALJ next found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id*.) As support, the ALJ stated six reasons. (AR 40-41.)

First, the ALJ found that Plaintiff "has described daily activities that are not consistent with the complaints of disabling symptoms and limitations" and also were "the same as those

necessary for obtaining and maintaining employment." (AR 40.) The ALJ cited evidence that Plaintiff can drive, shop for groceries, wash dishes, take her children to school, take care of her three children, prepare simple meals with the help of her children, handle money, care for her personal needs or grooming, and go out alone. (AR 40.) As to the ALJ's first rationale, it was reasonable to conclude that these activities were inconsistent with Plaintiff's testimony that she has pain all day that limits her ability to sit, stand, walk, or concentrate. *See Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding an ALJ justified in rejecting a claimant's testimony as inconsistent with evidence that "she was able to take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries"); *see also Molina*, 674 F.3d at 1113 ("Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."). As to the ALJ's second rationale, it also was reasonable to conclude that these activities, albeit limited by pain, were transferable to a work setting. *See Burch*, 400 F.3d at 680-81 (finding an ALJ justified in inferring that a claimant's daily activities involved "skills that could be transferred to the workplace" when the claimant was "able to care for her own personal needs, cook, clean and shop" and "interact[] with her nephew and her boyfriend").

Second, the ALJ found that Plaintiff had "made inconsistent statements regarding matters relevant to the issue of disability." (AR 40.) Specifically, the ALJ found that Plaintiff's Function Report, written in February 2014 (AR 246), was inconsistent with evidence that she performed substantial gainful activity as a house cleaner in 2013 and 2014 (AR 55, 215-16). As a result, Plaintiff amended her alleged disability onset date to January 1, 2015. (AR 56.) The ALJ reasonably rejected Plaintiff's subjective complaints because of the inconsistency. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (holding that claimant's recent work as a personal caregiver belied her claim of a debilitating illness); *Denham v. Astrue*, 49 F. App'x 813, 815 (9th Cir. 2012) (holding that claimant's janitorial work after her initial alleged onset date, which she amended to a later alleged onset

11

date, to be a valid reason to reject her testimony). Although Plaintiff points out that her children helped her clean houses (Joint Stip. at 13), this did not invalidate the ALJ's reasoning. It was rational to conclude that Plaintiff's ability to clean houses, even with help from her children, was inconsistent with her contemporaneous claims in the Function Report of debilitating symptoms. *See Molina*, 674 F.3d at 1111 (where evidence is susceptible to more than one rational interpretation, the ALJ's finding must be upheld).

Third, the ALJ found that Plaintiff's "medical history is not fully consistent with the alleged severity of her symptoms," based on images of Plaintiff's lumbar spine and results of physical examinations. (AR 40.) Specifically, the ALJ cited images of the lumbar spine showing mild stenosis and slight displacement of the nerve root. (AR 452-53; *see also* AR 396-97, 421.) The ALJ further cited physical examinations showing that, although Plaintiff had decreased range of motion, decreased but intact sensation, muscle strength of 4-5/5 in the feet, and decreased muscle tone in the feet (AR 512, 570, 641, 718), she also was normal in gait, strength, muscle tone, and reflexes (AR 638). This was a clear and convincing reason to discount Plaintiff's subjective pain allegations. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); *Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

Fourth, the ALJ found that, "[o]ther than a single epidural steroid injection prior to the amended alleged onset date [of January 1, 2015], [Plaintiff] has had only routine and conservative treatment consisting of pain medication and physical therapy." (AR 40-41.) The evidence cited by the ALJ reflected physical therapy sessions (AR 490, 491, 493, 495, 559, 647, 711-15); prescription medications such as Arthrotec (Diclofenac), Vicodin, Norco, and Gabapentin (AR 512, 577, 595); and a referral to a pain specialist (AR 639). It is unclear

whether the treatment Plaintiff received here, particularly the prescription pain medications, would be considered routine and conservative in Social Security disability cases. *Compare Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017) (rejecting an ALJ's finding that treatment for fibromyalgia consisting of Vicodin, as well as eight other prescription pain medications and multiple epidural injections, was conservative); *with Moore v. Astrue*, 572 F.3d 520, 525 (11th Cir. 2009) (upholding an ALJ's finding that knee pain treatment that included Diclofenac was conservative). However, it is unnecessary to resolve this issue because even if this was an invalid reason, the ALJ's other reasons to discount Plaintiff's subjective pain complaints, as discussed in this section, were clear and convincing reasons supported by substantial evidence. *See Carmickle v. Comm'r*, *Soc. Sec. Admin*., 533 F.3d 1155, 1162 (9th Cir. 2008) (holding that invalid reasons for an ALJ's credibility assessment are harmless error where the ALJ otherwise relies on valid reasons).

Fifth, the ALJ found that Plaintiff's "pain was reduced with short courses of physical therapy" and that there was no indication for surgery or other aggressive treatment. (AR 41.) The ALJ specifically cited evidence that, after physical therapy, Plaintiff's pain had improved (AR 493, 647, 711, 715), and pointed to the lack of evidence of aggressive treatment recommendations. This was a clear and convincing reason to discount Plaintiff's subjective pain allegations. *See Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (recognizing that an ALJ may consider evidence of "control of . . . pain that was satisfactory"); *Celaya v. Halter*, 332 F.3d 1177, 1181 (9th Cir. 2003) (holding that an ALJ "reasonably noted that the underlying complaints upon which [the claimant's] reports of pain were predicated had come under control"); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (upholding ALJ's credibility assessment where claimant had not sought an aggressive treatment program).

Sixth, the ALJ found that, "[a]s for [Plaintiff's] history of left ankle surgery, [Plaintiff's] medical history is not fully consistent with the alleged severity of her symptoms." (AR 41.) The ALJ cited evidence that, although Plaintiff had left ankle surgery in April 2011 (AR 685-

87), an April 2015 examination showed normal ankle reflexes, intact sensation in the feet, foot strength of 5/5, normal muscle tone, and ability to heel walk and toe walk (AR 583). The ALJ further cited a June 2015 examination that showed some decreased ankle functioning that likely was attributable to her low back pain (AR 570) but also cited the absence of any recommendation for additional treatment for the ankle (AR 570, 642). Based on these objective medical findings, this was a clear and convincing basis to discount Plaintiff's testimony about her limited ability to stand or walk. *See Rollins*, 261 F.3d at 857; *Burch*, 400 F.3d at 681.

In sum, the ALJ stated sufficient reasons that were clear and convincing reasons and supported by substantial evidence to discount Plaintiff's subjective allegations of pain. Thus, reversal is not warranted on this basis.

## III. The ALJ Did Not Err In Assessing Plaintiff's RFC But Reversibly Erred In Assessing Plaintiff's Ability To Perform Other Work (Issue Three).

In Issue Three, Plaintiff claims that the ALJ erred in determining her residual functional capacity and her ability to perform other work in the national economy. (Joint Stip. at 19-25, 30-33.) The Court considers each argument in turn.

### A. Residual Functional Capacity.

#### 1. Legal Standard.

A claimant's residual functional capacity ("RFC") represents the most she can do despite her limitations. 20 C.F.R. § 416.945(a)(1); *Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998); *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). An ALJ's RFC determination "must set out *all* the limitations and restrictions of the particular claimant."

*Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (emphasis in original). An ALJ will assess a claimant's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a)(3). "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8P, 1996 WL 374184, at *7 (July 2, 1996).

### 2. Analysis.

Here, the ALJ found that, as noted above, Plaintiff had an RFC for light work with additional limitations in both physical and mental functioning. (AR 38.) Plaintiff contends that the ALJ erred by failing to account for additional mental or physical limitations recommended by physicians who submitted opinions in this case. (Joint Stip. at 19-24.) It appears that Plaintiff is relying on the opinions of Dr. Roman, Dr. Jacobs, Dr. Berkowitz, and Dr. Martinez. (*Id.*)

### a. Dr. Roman (examining psychologist).

Dr. Roman, an examining psychologist, evaluated Plaintiff in May 2013 (AR 387-93) and November 2015 (AR 599-607). Although Plaintiff contends that the ALJ did not properly assess Dr. Roman's opinions (Joint Stip. at 19-20), her briefing of this issue is insufficient. Plaintiff fails to specify clearly in her brief what portions of Dr. Roman's opinions were different from the ALJ's RFC assessment and how the ALJ failed to account for such differences, which is the issue here. Thus, the Court need not address Plaintiff's RFC argument with respect to Dr. Roman. *See Carmickle*, 533 F.3d at 1161 n.2 ("We do not address this finding because [the claimant] failed to argue this issue with any specificity in his briefing.") (citation omitted).

//

Even if Plaintiff's argument was not waived, it would be meritless. During the November 2015 examination, Dr. Roman stated that Plaintiff would be "moderately to markedly" limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms or to perform at a consistent pace without an unreasonable number and length of rest periods. (AR 607.) Assuming *arguendo* that this is the limitation Plaintiff is contending the ALJ should have incorporated in the RFC, the ALJ explained why he did not do so. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995) (an ALJ must state specific and legitimate reasons based on substantial evidence to discount an examining physician's opinion). The ALJ stated that he gave partial weight to Dr. Roman's November 2015 opinion because any mental limitations that were greater than "moderate" were "not supported by [Plaintiff's] treatment records, which document limited conservative treatment and some improvement in her symptoms with treatment." (AR 44.) Because the ALJ discussed Plaintiff's mental health treatment records in detail earlier in his opinion (AR 42-43), the Court may reasonably discern the basis of the ALJ's reasoning. *See Brown-Hunter*, 806 F.3d at 492. The mental health treatment records, as discussed by the ALJ, reflected evidence of normal findings in areas such as mood, affect, eye contact, behavior, hygiene, judgment, insight, and speech (AR 569, 622, 624, 625-26, 628, 631, 638, 641); no evidence of delusions or hallucinations; and no evidence of hospitalization or emergency room treatment for mental symptoms. This was a specific and legitimate reason based on substantial record evidence to give partial weight to Dr. Roman's November 2015 opinion. *See Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (holding that an ALJ reasonably rejected an examining psychiatrist's opinion based on contrary test results contained throughout the record). Thus, Dr. Roman's opinion did not invalidate the ALJ's RFC determination.

### b.     Dr. Jacobs and Dr. Berkowitz (state agency psychologists).

Dr. Jacobs and Dr. Berkowitz, non-examining state agency psychologists, issued opinions about Plaintiff's mental functioning after reviewing her medical record. (AR 73-74,

76-78, 90-91.) Dr. Jacobs stated that "the presence of a mental [medically determinable impairment] is questionable." (AR 74.) Dr. Jacobs further explained that "effort on testing [was] less than full ([Plaintiff] drives, raises her kids, can define 'assemble', attends college, etc.; would estimate IQ as low average)." (*Id.*) Dr. Jacobs thus concluded that "[the mental RFC] as proposed gives [the] benefit of the doubt for moderate limitations [secondary] to either depression or dyslexia or both." (*Id.*) Accordingly, Dr. Jacobs assessed some "moderate" limitations in areas of mental functioning. (AR 76-77.) When asked to explain these limitations in "narrative form," Dr. Jacobs wrote that Plaintiff "is capable of performing simple, routine tasks independently," "is able to sustain a typical 40 [hour] work schedule [with] moderate accommodations," "is able to maintain limited social interactions," and "is able to adapt to routine changes in the workplace." (*Id.*)

Dr. Berkowitz similarly assessed "moderate" limitations in some areas of mental functioning. (AR 90-91.) When asked to provide "additional explanation" for these limitations, Dr. Berkowitz wrote in pertinent part that the presence of a mental medically determinable impairment was questionable and that the mental residual functional capacity as proposed gave the benefit of the doubt for moderate limitations secondary to either depression or dyslexia or both. (AR 91.) Dr. Berkowitz also wrote that Plaintiff "is not [limited] to simple work tasks and can persist at tasks that can be learned in up to three months on the job." (*Id.*)

The ALJ gave "great weight" to the opinions of Dr. Jacobs and Dr. Berkowitz. (AR 43.) The ALJ interpreted their opinions to recommend "no more than moderate limitations from [Plaintiff's] impairments." (*Id.*) However, the ALJ's RFC assessment did not expressly incorporate any of the moderate limitations in mental functioning suggested by the opinions. (AR 38.) Instead, the ALJ found that Plaintiff was limited to "unskilled low stress jobs that would require simple instructions." (*Id.*)

//
//

17

Plaintiff contends that the ALJ's RFC finding was erroneous because it failed to account for each of the moderate limitations that Dr. Jacobs and Dr. Berkowitz assessed. (Joint Stip. at 21-22.) To the contrary, the ALJ properly accounted for the state agency physicians' opinions. Specifically, the ALJ reasonably relied on their formal conclusions or ultimate imperatives regarding Plaintiff's mental functioning, as set out in the sections of their opinions stating their "narrative" or "additional" explanations. (AR 76-77, 91.) In other words, the ALJ was entitled to rely on the state agency physicians' conclusions, rather than their preliminary findings. *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1005-06 (9th Cir. 2015) (holding that an ALJ rationally relied on the specific section of a physician's report entitled "formal conclusions" that represented "specific imperatives regarding a claimant's limitations," and observing that "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC") (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (holding that an ALJ was entitled to credit a physician's ultimate conclusion about a claimant's ability to work, based on an assessment of the overall evidence in the record of the claimant's limitations)); *see also Buck v. Berryhill*, 869 F.3d 1040, 1050-51 (9th Cir. 2017) (holding that, in the context of assessing a non-examining state agency physician's opinion, an ALJ reasonably relied on the section of the opinion reflecting the physician's functional assessment, rather than a preliminary worksheet).

The ALJ's RFC finding that Plaintiff can perform "unskilled low stress jobs that would require simple instructions" reflected mental accommodations that did not understate the ultimate conclusions of Dr. Jacobs and Dr. Berkowitz. Indeed, the ALJ's RFC finding prescribed mental accommodations that were more generous than the state agency physicians' opinions, particularly in light of their comments that it was questionable whether Plaintiff even had a mental impairment, as well as Dr. Berkowitz's opinion that Plaintiff was not limited merely to simple work tasks. (AR 74, 91.) Thus, the opinions of Dr. Jacobs and Dr. Berkowitz did not invalidate the ALJ's RFC determination.

//

### c. Dr. Martinez (treating physician).

Dr. Martinez, a treating physician, issued an opinion about Plaintiff's physical and mental functioning. (AR 616-19.) In pertinent part, Dr. Martinez stated that Plaintiff experienced "10/10" pain; was incapable of even "low stress" jobs; could sit, stand, or walk for less than two hours per day; could occasionally lift 10 pounds; and would be absent from work more than four days per month. (*Id.*) Dr. Martinez also stated that Plaintiff had these symptoms and limitations since 2010. (AR 619.) Plaintiff contends that the ALJ erred by rejecting Dr. Martinez's opinion. (Joint Stip. at 23-24.) To the contrary, the ALJ stated two reasons to give "little weight" to Dr. Martinez's opinion (AR 42), one of which was a specific and legitimate reason based on substantial evidence. *See Lester*, 81 F.3d at 830.

The ALJ's first reason was that Dr. Martinez's opinion was inconsistent with Plaintiff's "limited and conservative treatment consisting of pain medication and physical therapy." (AR 42.) As discussed above, however, it is not clear that the pain medications that Plaintiff was prescribed would be considered conservative treatment in Social Security disability cases. But it is unnecessary to resolve that issue in light of the ALJ's second reason, which was that Dr. Martinez's "conclusion that [Plaintiff] experienced these limitations since 2010 [is] inconsistent with [Plaintiff's] earnings record, which document work at substantial gainful activity levels from 2012 through 2014. (*Id.*) The Court concurs that Dr. Martinez's assessment that Plaintiff had debilitating limitations since 2010 (AR 619) was inconsistent with her earnings record showing substantial gainful activity from 2012 through 2014 (AR 212). Regardless of whether Dr. Martinez was aware of Plaintiff's employment, this was a specific and legitimate reason based on substantial evidence to give his opinion little weight. *See Grammer v. Berryhill*, 706 F. App'x 383, 383 (9th Cir. 2017) (holding that an ALJ properly rejected a physician's opinion because it was inconsistent with the claimant's subsequent ability to work for three months); *see also Valentine*, 574 F.3d at 692 (holding that an ALJ properly rejected a treating psychologist's opinion where the psychologist reported the

claimant was unemployable while acknowledging he was continuing to work full-time). Thus, Dr. Martinez's opinion did not invalidate the ALJ's RFC determination.

## B.     Work in the National Economy.

### 1.     Legal Standard.

At step five of the Commissioner's five-step sequential evaluation process, "the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012); *see also* 20 C.F.R. § 416.966(b). An ALJ's determination at step five involves "exploring two issues." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). First, the ALJ must identify the types of occupations that a person with the claimant's limitations could perform. *See id.* Second, the ALJ must ascertain that such jobs exist in significant numbers in the national economy. *See id.*

The testimony of a vocational expert ("VE") about an occupation's suitability must be reconciled with the Dictionary of Occupational Titles ("DOT"). The DOT is the Commissioner's "primary source of reliable job information" and creates a rebuttable presumption as to a job classification. *Johnson v. Shalala*, 60 F.3d 1428, 1434 n.6, 1435 (9th Cir. 1995); *see also Tommasetti*, 533 F.3d at 1042. An ALJ may not rely on a VE's testimony regarding the requirements of suitable occupations that the claimant might be able to perform without first inquiring of the VE whether his testimony conflicts with the DOT and without obtaining a reasonable explanation for any apparent conflicts. *Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing SSR 00-4p). "For a difference between an expert's testimony and the Dictionary's listings to be fairly characterized as a conflict, it must be obvious or apparent." *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016). An ALJ may rely on VE testimony that contradicts the DOT only insofar as the record contains persuasive

evidence to support the deviation. *Johnson*, 60 F.3d at 1435; *see also Tommasetti*, 533 F.3d at 1042; *Light v. Soc. Sec. Admin*., 119 F.3d 789, 793 (9th Cir. 1997).

A VE's testimony about job numbers must demonstrate that a "significant number" of jobs exist for the claimant in the national economy. The Ninth Circuit has "never set out a bright-line rule for what constitutes a 'significant number' of jobs." *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). However, "work which exists in the national economy can be satisfied by work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez*, 740 F.3d at 528 (emphasis in original); *see also* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If either number is significant, the ALJ's finding about job numbers must be upheld. *See Beltran*, 700 F.3d at 390.

## 2. Analysis.

Plaintiff contends that the ALJ erroneously found at step five that she can perform work in the national economy consisting of "light" work, given her limitations in standing and walking. (Joint Stip. at 25-26.) In his RFC determination, the ALJ found that Plaintiff was capable of light work but was limited to standing and walking for four hours in an eight-hour workday with an assistive device, as well as a limitation requiring her to alternate sitting and standing every hour. (AR 38.) Plaintiff contends that her limitations in standing and walking preclude her from performing the light occupations that the ALJ identified at step five. (Joint Stip. at 25.)

An occupation is classified as "light work" when, in pertinent part, "it requires a good deal of walking or standing." *See* 20 C.F.R. § 416.967(b). Specifically, "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." *See* SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). The three occupations that the ALJ identified at step five are each classified as "light work," according to the DOT.

See DOT 529.687-010 (Basket Filler); DOT 209.587-034 (Merchandise Marker); DOT 237.367-018 (Information Clerk). In response to a hypothetical question positing a person limited to walking and standing to four hours per day with an assistive device and limited to alternating positions every hour, the VE testified that such a person could perform these three light occupations, without raising a conflict with the DOT. (AR 64-65.) As discussed below, the ALJ reversibly erred in relying on the VE's testimony that her opinion was consistent with the DOT.

To be sure, an ALJ does not necessarily commit reversible error by relying on a VE's testimony that, consistent with the DOT, a claimant can perform light work in spite of the claimant's inability to stand or walk for six hours per day. *See Rebensdorf v. Berryhill*, 773 F. App'x 874, 877 (9th Cir. 2019) ("[N]ot all jobs classified as 'light work' [in the DOT] require six hours of standing or walking per day."); *Hatfield v. Berryhill*, 768 F. App'x 629, 631 (9th Cir. 2019) (holding that ALJ did not err in relying on VE's testimony that the claimant could perform light work, despite the claimant's limitation to five hours of standing in a workday). Moreover, the DOT lists the maximum, not the minimum, requirements of occupations. *See* SSR 00-4P, 2000 WL 1898704, at *3 (Dec. 4, 2000) ("The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings."); *Gutierrez*, 844 F.3d at 807 (recognizing that the DOT describes an "occupation," which "is a broad term that includes 'the collective description' of 'numerous jobs' and lists 'maximum requirements' of the jobs as 'generally performed.'") (quoting SSR 00-4P); *see also* SSR 96-8P, 1996 WL 374184, at *3 ("[P]articular occupations may not require all of the exertional and nonexertional demands necessary to do the full range of work at a given exertional level."). Thus, had Plaintiff's limitation to standing and walking for four hours per day been her only limitation in that area of functioning, the ALJ's step five finding may have been based on substantial evidence and free of reversible legal error.

//

//

Here, however, Plaintiff was further limited to "alternative sitting and standing every hour." (AR 38.) A limitation requiring alternate sitting and standing may significantly erode both the light and sedentary occupational bases. *See* SSR 83-12, 1983 WL 31253, at *4 (a worker who must alternate periods of sitting and standing "is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work"); *see also Gallant v. Heckler*, 753 F.2d 1450, 1457 (9th Cir. 1984) (noting that claimant who must alternate periods of sitting and standing "is defined as functionally not capable of doing either the prolonged sitting contemplated in the definition of sedentary work or the prolonged standing or walking contemplated for most light work"). In the case of an unusual ability to sit and stand, such as a requirement to alternate sitting and standing every hour, a VE "should be consulted to clarify the implications for the occupational base." *See* SSR 83-12, 1983 WL 31253, at *4. The record here is silent as to that question because the ALJ did not specifically ask the VE to clarify what the implication were, for the light and sedentary occupational bases, of Plaintiff's need to alternate positions every hour. Thus, reversal is warranted on this basis.

## IV.   Reversal For Further Administrative Proceedings Is Warranted.

The ALJ erred in failing to obtain the VE's explanation for what implication, if any, Plaintiff's need to alternate sitting and standing every hour had on the relevant occupational bases. However, the Court disagrees with Plaintiff's argument that she is entitled to an award of benefits. (Joint Stip. at 33.)   The record is not fully developed about Plaintiff's ability to perform other work in the national economy existing in significant numbers. *See Treichler*, 775 F.3d at 1101 ("Administrative proceedings are generally useful where the record 'has [not] been fully developed.'") (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)) (alteration in original). Thus, further administrative proceedings are warranted.

//

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED AND REMANDED for further administrative proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and counsel for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: January 31, 2020

KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE